·EDWARD A. POLZIN AND OTHERS v. WALTER
I. MERILA AND ANOTHER.
NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS,
GARNISHEE.

103 N. W. (2d) 198.

May 6, 1960—No. 37,881.

*James Malcolm Williams* and *David W. Nord,* for appellants.
*Faegre & Benson* and *Armin M. Johnson,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiffs' motion for leave to file a supplementary complaint naming the garnishee in the above action, Northwestern National Bank of Minneapolis, as a party defendant therein. In denying the motion, the court held that plaintiffs had failed to show facts tending to charge garnishee with any liability to defendants and did not show cause for the allowance of the motion.

On appeal plaintiffs contend that the sum of $53,500 paid by defendant Walter I. Merila to garnishee on March 16, 1959, against which garnishee had simultaneously issued a letter of credit, and against which Merila had drawn a draft for the full amount on March 19, 1959, prior to service of the garnishee summons, was subject to garnishment by plaintiffs as creditors of Merila.

The letter of credit contained the following provisions:

"The National City Bank of New York
New York City
Letter of Credit Issued by
NORTHWESTERN NATIONAL BANK
OF MINNEAPOLIS

"Letter of Credit
No. C89546          Minneapolis, Minnesota [March 16,] 19[59]

"Gentlemen,

"We beg leave to introduce to you and to commend to your courtesies [Walter I. Merila] a specimen of whose signature appears in the accompanying list of correspondents.

"Kindly provide [Walter I. Merila] with such funds as may be required up to an aggregate amount of U. S. $[$53,500] Dollars against ———— drafts drawn at sight in United States Dollars on

"The National City Bank of New York
New York City

"We engage that such drafts negotiated by you before the first day of [April 1, 1960] will be duly honored.

"The amounts paid must be endorsed upon the Letter of Credit and the drafts must state that they are drawn under N. C. B. Letter of Credit No. C 89546 dated [March 16,] 19[59].

"Your charges, if any, are to be paid by the beneficiary.

"When exhausted, this Letter of Credit must be canceled and attached to the final draft.

> "Yours respectfully,
> [Northwestern National Bank of Minneapolis]
> [By: Signature of Bank Officer]

"To Messrs:

"The Bankers mentioned in the accompanying list of correspondents."

This letter also included the following statement executed by the National City Bank of New York:

"NOT TO EXCEED ($100,000.) ONE HUNDRED THOUSAND DOLLARS This Credit is issued under our protection and for our account
THE NATIONAL CITY BANK OF NEW YORK

"C. F. WURTZ          J. J. SULLIVAN
p. p. C. F. WURTZ     J. J. SULLIVAN, Asst. Cashier"

The draft drawn against this letter of credit was presented to and honored by the National City Bank of New York on March 23, 1959. On March 24, 1959, at 4:10 p. m. the garnishee, Northwestern National Bank of Minneapolis, was served with the garnishee summons. In its disclosure a representative of garnishee disclosed as follows:

"On the 24th day of March, 1959, 4:10 P. M., the time of the service of garnishee summons herein on said garnishee:

"(1)  There was due and owing the defendant above named, Walter I. Merila and Mrs. Walter I. Merila, a.k.a. Glory Dorene Perry Merila, a.k.a. Glory Dorene Perry and Commercial Consultants, from said garnishee, the sum of $31.39 Funds held subject to prior garnishment.

"(2)  There was in the possession of the garnishee the following

personal property, instruments, and papers belonging to the above named defendant: None."

Subsequently, upon order of the court for an oral disclosure, a representative of the garnishee appeared and testified with reference to the transaction with Walter I. Merila.

The record discloses that on March 16, 1959, Walter I. Merila called upon the garnishee and stated that he was about to leave for Europe on a business trip; that in exchange for $53,500 which he then paid garnishee, the latter issued to him a letter of credit, No. C89545, for $53,500 to expire April 1, 1960, as above set forth; that the garnishee then had on deposit with National City Bank of New York a sufficient sum to cover drafts drawn upon the latter against such letter of credit; that when National City Bank of New York received notice that a letter of credit had been issued by the garnishee it was its custom to charge the account of the garnishee with the face amount of such letter and to reduce the balance in garnishee's account by the same amount.

The evidence further disclosed that on March 19, 1959, Walter I. Merila received $53,500 on the strength of such letter of credit from the First Wisconsin National Bank of Milwaukee which then drew a sight draft upon the National City Bank of New York in the same amount; that such sight draft, accompanied by the letter of credit, had been duly presented and fully paid by National City Bank of New York on March 23, 1959, prior to the date of service of the garnishee summons herein; and that on March 24 or March 25, 1959, the garnishee had received from National City Bank of New York the canceled draft.

■ It is clear that on March 24, 1959, when the garnishee summons was served upon the garnishee, the latter was not indebted to Walter I. Merila in so far as any funds represented by the letter of credit are concerned. When he paid the garnishee the sum of $53,500 on March 16, 1959, he received in return therefor the letter of credit, which in effect requested anyone to whom it was presented to provide Merila with funds up to $53,500, and directed the party furnishing him such funds to then draw a sight draft on the National City Bank of New York for reimbursement for any such payments made to Merila;

and which guaranteed that any such drafts, up to the face amount of the letter of credit, would be paid by National City Bank of New York if such drafts were presented before April 1, 1960. It seems obvious that after Merila had been paid the entire amount called for in the letter of credit, he could no longer claim that the garnishee was indebted to him therefor under any circumstances. Likewise, it would seem clear that when the draft drawn by the First Wisconsin National Bank of Milwaukee was presented to and paid by National City Bank of New York, and the garnishee's account debited with the amount thereof, the garnishee had fully paid and performed all of its obligations due under the letter of credit. Its liability then ceased not only as to Merila, but as to the First Wisconsin National Bank of Milwaukee and National City Bank of New York as well.

■ . Under M. S. A. 571.42, subd. 1,[1] and 571.43(1),[2] the only rights against garnishee acquired by plaintiffs upon the service of the garnishee summons were those then held by defendants against such garnishee. It is clear therefrom that the garnishee summons attaches and binds only the personal property and money or indebtedness owed defendant and in the possession or under the control of the garnishee at the moment of the service of the garnishee summons. Thereunder no obligation rests upon the garnishee as to money or property of defendant unless at the time of service of the summons the same is due absolutely and without contingencies. As this court stated in Gilbert v. Pioneer Nat. Bank, 206 Minn. 213, 215, 288 N. W. 153, 154:

"Garnishment attaches and binds the property and money in the hands or under the control of the garnishee belonging to the defendant, and

---

[1]M. S. A. 571.42, subd. 1, provides: "Except as provided in sections 571.43 and 571.50, service of the garnishee summons upon the garnishee shall attach and bind, to respond to final judgment in the action, all personal property of the defendant in his possession or under his control and all indebtedness owing by him to the defendant at the time of such service."

[2]M. S. A. 571.43(1) provides: "Any money or other thing due to the defendant, unless at the time of the service of the summons the same is due absolutely, and without depending on any contingency."

all indebtedness owing by him to the defendant at the date of the service of the garnishment summons, to respond to final judgment in the action. * * * The plaintiff can assert only the right of the defendant against the garnishee, * * *. As between the debtor and the garnishee, the garnishment does not change the rights of the parties, except that it transfers to the attaching creditor the right to .proceed against the garnishee for the collection of the debt. The attaching creditor acquires by the garnishment the same, but no greater, right, than the debtor has against the garnishee. Bacon v. Felthous, 103 Minn. 387, 115 N. W. 205; Midland Loan Finance Co. v. Kisor, 206. Minn. 134, 287 N. W. 869."

From the foregoing it would follow that since Merila had no claim against the garnishee on March 24, 1959, for anything he had paid for the letter of credit, which by then had been exhausted, the garnishee was correct in disclosing that it owed nothing to him at the time of the service of the garnishee summons upon it. This being true, it would have served no purpose for the court to have ordered that garnishee appear as a party to the action. § 571.51.[3]

Affirmed.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[3]M. S. A. 571.51 provides in part: "* * * but in this, and in all other cases where the garnishee denies liability, the plaintiff may move the court at any time before the garnishee is discharged, on notice to both the defendant and the garnishee, for leave to file a supplemental complaint making the latter a party to the action, and setting forth the facts upon which he claims to charge him; and, if probable cause is shown, such motion shall be granted. The supplemental complaint shall be served upon both defendant and garnishee, either or both of whom may answer, and the plaintiff may reply. Such issues shall be brought to trial and tried as in other actions after judgment is rendered for plaintiff in the main action."